**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LaTanya R. Williams, | ) | |
| *Plaintiff*, | ) | No. 26 C 6920 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| Housing Authority of Cook County, | ) | |
| *Defendant*. | ) | |

**OPINION & ORDER**

Plaintiff LaTanya R. Williams filed an emergency motion for a temporary restraining order and preliminary injunction. (Dkt. 6). Williams has not served, nor provided notice of the motion to, Defendant; and Defendant has not appeared. (Dkt. 13, ¶ 4). The Court treats Williams' motion as *ex parte*. For the reasons below, the Court denies Williams' motion. (Dkt. 6). The Court orders Williams to serve Defendant and file the executed summons. The Court grants Williams' motion to amend her exhibits. (Dkt. 13).

Williams filed a three-count complaint against Defendant stemming from her alleged housing situation. (Dkt. 1, ¶¶ 37-49). Williams alleges that Defendant's actions deprived her of "a protected property interest in continued housing" by "delaying the hearing for an unreasonable period, misclassifying the termination basis in the June 12, 2024 decision, and failing to provide lawful notice and process before reducing [her] effective housing[.]" (*Id.*, ¶¶ 37-40). Defendant's conduct allegedly caused Williams to become homeless. (*Id.*) She also claims that Defendant violated the Fair Housing Act (42 U.S.C. §§ 3604(f), 3605, 3617) by failing "to honor" her "disability-related accommodation," reducing her housing voucher "without lawful notice and process," and by interfering with her "ability to obtain and maintain housing." (*Id.*, ¶¶ 41-45). Williams alleges a skeletal *Monell* claim that Defendant "acted through policies, customs, practices, and [was a] final decisionmaker" and that these "policies and customs" caused her alleged harms. (*Id.*, ¶¶ 46-49).

"A preliminary injunction is an 'extraordinary' equitable remedy that is 'never awarded as of right.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). "The default rule is that a plaintiff seeking a preliminary injunction must make a clear showing that '[she] is likely to succeed on the merits, that [she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest.'" *Id.* at 346 (quoting *Winter*, 555 U.S. at 20, 22). "Of all of these factors, the likelihood of success on the merits ordinarily carries the most weight." *Minocqua Brewing Co. LLC v. Hess*, 160 F.4th 849, 855 (7th Cir. 2025) (quoting *A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 771 (7th Cir. 2023)).

The "circumstances in which an *ex parte* order should be granted are extremely limited." *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 321 (7th Cir. 1984). A TRO is already an "extraordinary and drastic remedy," its severity is amplified when a party seeks one without notice. *Goodman v. Ill. Dep't of Fin. & Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005). Federal Rule of Civil Procedure 65(b) requires specific facts justifying a departure from adversarial proceedings and public access to the courts. *Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974); *Mansukhani*, 742 F.2d at 321. A court may issue a TRO without notice only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). The Court has reviewed Williams' complaint, motion, declaration, and exhibits. (Dkts. 1, 6-14). Williams failed to show why *ex parte* relief is warranted. There is no reason why the Court should issue this drastic relief without notice to Defendant. On this basis alone, the Court denies Williams' motion. (Dkt. 6). Because Williams is pro se, however, the Court considers the entirety of her motion.

Before the Court turns to the merits, there are issues warranting attention. The first is the statute of limitations. "An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice[.]" 42 U.S. Code § 3613(a)(1)(A). While Defendant's written decision terminating Williams' housing issued on June 12, 2024, and Williams filed her complaint on June 10, 2026, many of the issues Williams raises occurred before June 12, 2024—and therefore more than two years before her filing date. (*See* Dkts. 1, 6-12). Assuming timeliness, Williams alleges issues from Defendant's violation of a state court order. (*See* Dkt. 9 at 2; Dkt. 1, ¶¶ 1, 27-36). Willaims does not parse out which claims arise solely from Defendant's violations of that state court order, however. (*Id.*) This leaves the Court unclear on the metes and bounds of Williams' requested relief and whether her claims fall under the Rooker-Feldman Doctrine. *Golden v. Helen Sigman & Assocs., Ltd.*, 611 F.3d 356, 362 (7th Cir. 2010); *Van Harken v. City of Chicago*, 103 F.3d 1346, 1349 (7th Cir. 1997) ("it does not follow that decisions by a *lower* state court are reviewable in federal courts"). The Court also cannot clearly delineate which issues fall under 42 U.S.C. § 1983 and which under 42 U.S.C. § 3601 *et seq*. This raises the specter of doubt whether Williams' claim under § 1983 is viable because "a § 1983 action . . . may not be available if Congress has displaced § 1983's general cause of action with a more specific remedy." *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 368 (2025); *see also Hopkins v. Springfield Hous. Auth.*, 592 F. App'x 528, 529-30 (7th Cir. 2015) (affirming dismissal of a § 1983 claim "because the enforcement mechanisms provided" by the Fair Housing Act are "exclusive"). The Fair Housing Act has clear enforcement mechanisms and specific remedies that may therefore displace Williams' § 1983 claim. *Id.*; 42 U.S.C. § 3601 *et seq.*

Setting all this aside, Williams' motion fails on the merits. Williams sued under 42 U.S.C. § 1983 claiming Defendant violated her procedural due process rights by causing her to lose her housing.

(Dkt. 1, ¶¶ 37-40). She asserts "that HACC took approximately 785 days to provide a hearing after Plaintiff's first documented appeal request, then issued a final decision that misapplied the governing regulations and relied on inaccurate and incomplete information." (Dkt. 6 at 1). She further asserts "that HACC later reduced Plaintiff's voucher from three bedrooms to two bedrooms without adequate notice, without a new lawful family-size determination, and in a manner inconsistent with the prior granted accommodation and the record already before HACC." (*Id.* at 2). The Court is not unsympathetic to Williams' claims of homelessness. This strongly favors her on the harm element. Yet none of the evidence Williams submitted connects the dots between her allegations, arguments in her motion, and the situation at bar. Virtually all the evidence is from 2024 or earlier. Injunctive relief requires urgency, immediacy, and a this-must-happen-now emergency. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983); *Illinois League of Advocs. for the Developmentally Disabled v. Illinois Dep't of Hum. Servs.*, 803 F.3d 872, 878 (7th Cir. 2015). None of that is here. The Court is left guessing what happened such that she needs this drastic remedy *now*; Williams' evidence from 2024 and before does not explain why she needs this drastic relief right now—halfway through 2026—much less why she needs it without Defendant's knowledge. (*See* Dkts. 6-14). The only evidence before the Court shows that Williams waited more than two years to bring her emergency motion.

Furthermore, Williams submitted the "Order and Decision" from the Defendant. (Dkt. 12-10). This ten-page single-spaced order details the basis for Defendant's termination of Williams' participation in the housing program. (*Id.*) It shows that Defendant interviewed Williams, reviewed at least 18 Exhibits, and considered Williams' arguments. (*Id.*) Defendant rejected Williams' housing for several reasons, including because it found that Williams violated the rules, failed to provide information regarding her housing income, and apparently received—yet failed to disclose—income meant for her housing. (*Id.* at 7-12). Defendant also found that Williams failed to produce tax returns from 2018-2020—preventing Defendant from ascertaining whether Williams received income from a PPP loan. (*Id.* at 6-12). Defendant drew an adverse inference from this as well as Williams' repeated failures to provide documents showing whether she received PPP loan money. (*Id.*) Defendant also grounded its decision on irregularities, inconsistencies, and credibility faults in Williams' positions. (*Id.*) The order also considered Williams' mitigating circumstances, including that she was taking care of her son and nephew, who suffer from medical conditions. (*Id.* at 9).

"To demonstrate a procedural due process violation of a property right, the plaintiff must establish that there is '(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process.'" *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) (quoting *Hudson v. City of Chi.*, 374 F.3d 554, 559 (7th Cir. 2004)). There is insufficient evidence for the Court to discern how Defendant violated Williams' procedural due process rights. Defendant interviewed Williams, gave her the opportunity to present evidence and arguments, gave her the opportunity to appeal its decision, and Williams in fact appealed. (Dkt. 12-10 at 6-12); (*see also* Dkts. 10-4, 11). Defendant's denial of Williams' housing was based not on a procedural fault, but Williams' failure to follow the rules. To be sure the 785-day delay is significant, but Williams fails to tie that delay to a violation of her due process rights. While Williams vaguely claims that Defendant changed other aspects of her housing assistance without notice, there is insufficient evidence for the Court to discern what happened, when it happened, and how those events from several years ago are relevant right now. (*See* Dkts. 1, 6-12).

Williams' arguments under the Fair Housing Act, alleging discrimination based on disability, fail for similar reasons. (Dkts. 6, 9); (Dkt. 1, ¶¶ 41-45). "A § 3617 discrimination claim is comprised of four elements: (1) the plaintiff is a protected individual under the FHA, (2) they were engaged in the exercise or enjoyment of their fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of their protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate." *Watters v. Homeowners' Ass'n at Pres. at Bridgewater*, 48 F.4th 779, 785 (7th Cir. 2022).

Williams' motion is cursory and does not address these factors. The Court can discern no evidence of discrimination. Williams asserts "disability-related accommodation" discrimination stemming from Defendant reducing Williams' housing voucher from a 3-bedroom to a 2-bedroom (which apparently caused Williams difficulties searching for and maintaining housing several years ago). (Dkt. 9 at 2); (Dkt. 6 at 1); (Dkt. 1, ¶¶ 41-45). Even assuming she satisfied factors one and two, there is simply no evidence showing elements three or four. *Watters*, 48 F.4th at 785. While Williams claims her landlord sent her a threatening letter, the Court is unsure which exhibit shows that or whether Williams even provided the Court with the alleged letter. (*See, e.g.*, Dkt. 1, ¶¶ 3, 35). Even giving grace to Williams on this, Williams completely fails to show that Defendant was "motivated by an intent to discriminate." *Watters*, 48 F.4th at 785.

The Court must "liberally construe filings from *pro se* litigants." *Torres v. Brookman*, 155 F.4th 952, 957 (7th Cir. 2025). But it cannot disregard binding Supreme Court precedent. To succeed on the requested injunctive relief, Williams "must make a clear showing that [she] is likely to succeed on the merits[.]" *Starbucks*, 602 U.S. at 345 (quotes omitted). Taking that high bar—and raising it even higher under the *ex parte* standard—puts Williams' requested relief out of reach. *Id.* The "circumstances in which an *ex parte* order should be granted are extremely limited," and this is not one of them. *Mansukhani*, 742 F.2d at 321. Nor does Williams come close to a "clear showing" of success on the merits. *Starbucks*, 602 U.S. at 345. For all these reasons, the Court denies Williams' emergency motion for a temporary restraining order and preliminary injunction. (Dkt. 6). The Court orders Williams to serve Defendant and file the executed summons. The Court grants Williams' motion to amend her exhibits. (Dkt. 13).

Virginia M. Kendall
United States District Judge

Date: August 25, 2026